```
                                                           -PS-
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

KATHLEEN KRUEGGER,

                  Plaintiff,

          -v-                              06-CV-6639T
                                           **DECISION** and
JO ANNE BARNHART,                          **ORDER**
COMMISSIONER OF SOCIAL SECURITY,

                  Defendant.
_____
```

INTRODUCTION

Plaintiff Kathleen Kruegger ("plaintiff" or "Kruegger") brings this action pursuant to the Social Security Act, (codified in relevant parts at 42 U.S.C. § 401 et. seq. and 42 U.S.C. § 1381 et. seq.) claiming that the Commissioner of Social Security ("Commissioner")improperly denied her application for disability insurance and Supplemental Security Income ("SSI").[1] Specifically, Kruegger alleges that the decision of an Administrative Law Judge ("ALJ") was erroneous and not supported by either the substantial evidence on the record or the applicable law.

The Commissioner moves for judgment on the pleadings on grounds that the ALJ's decision was correct, was supported by substantial evidence, and was made in accordance with applicable law. Kruegger opposes the defendant's motion, and cross-moves for judgment on the pleadings. For the reasons discussed below, the

---

[1] This case (formerly civil case 04-CV-0842) was transferred to the undersigned by the Honorable Richard J. Arcara, Chief Judge, United States District Court for the Western District of New York by Order dated January 18, 2007.

Commissioner's motion for judgment on the pleadings is denied, and the case is remanded for calculation of benefits.

## BACKGROUND

On June 21, 2002, plaintiff Kathleen Kruegger, then aged 49 years old and a former housekeeper, applied for disability benefits and SSI benefits claiming that she became disabled on October 1, 1999 due to fibromyalgia, a respiratory illness, and anxiety. These conditions limited her ability to work due to overall body pain, especially in her back and neck. (T.15)[2].

Kruegger's application was denied initially and on plaintiff's request, an administrative hearing was requested. The hearing was held on July 1, 2004, before ALJ Jasper J. Bede, and plaintiff was represented by an attorney. In a July 27, 2004 decision, ALJ Bede found that although plaintiff suffered from a combination of severe multiple joint pain, a respiratory ailment and an anxiety related disorder, plaintiff was not disabled within the meaning of the Act. The Appeals Council denied plaintiff's request for review on August 20, 2004. Plaintiff commenced this action on October 14, 2004.

## DISCUSSION

I. Jurisdiction and Scope of Review

42 U.S.C. § 405(g) grants jurisdiction to district courts to hear claims based on the denial of Social Security benefits. Additionally, the section directs that when considering such a claim, the court must accept the findings of fact made by the

---

[2] "T." citations are to pages of the administrative transcript filed by the Commissioner as part of her answer.

Commissioner, provided that such findings are supported by substantial evidence in the record. Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison Co. v NLRB, 305 U.S. 197, 229 (1938). Section 405(g) thus limits the court's scope of review to determining whether or not the Commissioner's findings were supported by substantial evidence. See, Mongeur v. Heckler, 722 F.2d 1033, 1038 (2d Cir. 1983) (finding that the reviewing court does not try a benefits case de novo). The court is also authorized to review the legal standards employed by the Commissioner in evaluating the plaintiff's claim.

The court must "scrutinize the record in its entirety to determine the reasonableness of the decision reached." Lynn v. Schweiker, 565 F.Supp 265, 267 (S.D. Tex. 1983) (citation omitted). The Commissioner asserts that her decision is supported by the evidence in the record, and moves for judgment on the pleadings pursuant to Rule 12C of the Federal Rules of Civil Procedure. Under Rule 12C, judgment on the pleadings may be granted where the material facts are undisputed and where judgment on the merits is possible merely by considering the contents of the pleadings. Sellers v. M.C. Floor Crafters, Inc., 842 F.2d 639 (2d Cir. 1988). If, after a review of the pleadings, the court is convinced that "the plaintiff can prove no set of facts in support of [her] claim which would entitle [her] to relief," judgment on the pleadings may be appropriate. See, Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

For the reasons discussed below, the Commissioner's motion for judgment on the pleadings is denied, and the case is remanded to the Commissioner.

## II. Substantial Evidence in the Record Does Not Support the ALJ's Conclusions

The ALJ made the determination based on the evidence before him that plaintiff did not suffer from a disability under the Social Security Act. A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months ...." 42 U.S.C. § 423(d) (1991). Specifically, the ALJ found that while plaintiff suffered a combination of severe multiple joint pain, a respiratory ailment and an anxiety related disorder, these conditions did not constitute an impairment under 20 C.F.R. 404.1501 et. seq. (T.15).

### A. Statutory Standard for Entitlement to Disability Benefits

The ALJ performed the five-step sequential evaluation of plaintiff's condition to determine that plaintiff was not disabled. The ALJ determined that the plaintiff was not engaged in substantial gainful employment; that plaintiff's conditions – either individually or in combination – were severe conditions; that plaintiff's multiple joint pain, respiratory ailment, and anxiety related disorder, – either alone or in combination with her other impairments – did not meet or medically equal one of the

listed impairments in Appendix 1, Subpart P, Regulation No. 4; that plaintiff could no longer perform the functions of her previous employment; and that plaintiff retained the residual functional capacity ("RFC") to perform jobs that exist in significant numbers in the national economy.  In doing so, the ALJ evaluated the medical record, and gave weight to the opinions of plaintiff's treating physicians and examining physicians.

The assessment of a treating physician is given controlling weight if is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and [it] is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2); see Green-Younger v. Barnhart, 335 F.3d 99, 106 (2d Cir. 2003); Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 188 (2d Cir. 1998).  The ALJ may not arbitrarily substitute [his] own judgment for the treating physician's competent medical opinion. See Rosa v. Callahan, 168 F.3d 72, 79 (2d Cir. 1999).  The "treating physician rule" does not apply, however, when the treating physician's opinion is inconsistent with the other substantial evidence in the record, such as the opinions of other medical experts.  Halloran v. Barnhart, 362 F.3d 28, 32 (2d Cir. 2004); see also Veino v. Barnhart, 312 F.3d 578, 588 (2d Cir. 2002).

When the treating physician's opinion is not given controlling weight, the ALJ must consider various "factors" to determine how much weight to give to the opinion. 20 C.F.R. § 404.1527(d)(2).

These factors include: (i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the SSA's attention that tend to support or contradict the opinion. *Id.* The ALJ must also set forth his reasons for the weight assigned to the treating physician's opinion. *Id.*

The ALJ also must consider claimant's subjective complaints of pain and limitations in making a determination of her RFC. 20 C.F.R. § 404.1529 and SSR 96-7p. The ALJ is not permitted to find a claimant not credible solely because the severity of her subjective complaints of limitations is not supported by objective medical evidence. *Id.* The ALJ may evaluate the credibility of a claimant together with the medical findings and other evidence in determining the true extent of the disability alleged by the claimant. Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979).

At the last step of the sequential evaluation, the burden of proof shifts to the Commissioner to show there is other gainful employment in the national economy the claimant could perform considering the claimant's RFC, age, and past work experience. 20 C.F.R. § 404.1520(f); see Carroll v. Secretary of H.H.S., 705 F.2d 638, 642 (2d Cir. 1983). Where there exists a combination of exertional and nonexertional limitations, an ALJ must evaluate whether the occupational base for exertional work is eroded by the

6

nonexertional limitations. SSR 83-14; see Bapp v. Bowen, 802 F.2d 601 (2d Cir. 1986). Pursuant to the regulations, the Commissioner is ultimately responsible for determining whether an individual meets the statutory definition of disability. 20 C.F.R. §404.1527(e)(1).

Plaintiff contends that the ALJ erred in finding that plaintiff retained the ability to perform a wide range of light and sedentary work and that the ALJ failed to consider the effects of her impairments in combination when determining her RFC, failed to give controlling weight to plaintiff's treating sources, and failed to support his conclusion that plaintiff overstated her symptoms. Specifically, plaintiff argues that she is unable to sit, walk or stand for prolonged periods due to pain and claims that her physicians support that claim.

Light work involves standing 6 hours out of an 8-hour day and lifting up to 20 pounds. 20 C.F.R. §§ 404.1567; 416.967. Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. § 404.1567(a). SSR 96-9p provides "[i]n order to perform a full range of sedentary work, an individual must be able to remain in a seated position for

7

approximately 6 hours of an 8-hour workday, with a morning break, a lunch period, and an afternoon break at approximately 2-hour intervals. If an individual is unable to sit for a total of 6 hours in an 8-hour work day, the unskilled sedentary occupational base will be eroded."

Substantial evidence exists in the record which supports the plaintiff's argument that she was disabled during the relevant period, and therefore, the Commissioner's decision is reversed.

B. <u>Discussion of the Evidence</u>

Plaintiff's conditions are such that she experienced significant pain in various parts of her body over a period of years. Throughout this period plaintiff's primary care, pain specialist, and psychiatric treating physicians treated her with a variety of medications for back and neck pain, depression, stiff joints and difficulty sleeping.

The ALJ found that the medical evidence indicated Kruegger had the following severe impairments since her alleged disability onset date of October 1, 1999: multiple joint pain, a respiratory ailment, and an anxiety related disorder. (T.15). He noted that Kruegger also complained of overall joint and muscle pain and swelling, depression, insomnia, inability to sit or walk for extended periods, as well as back and neck pain. (T.18).

The ALJ found that the medical evidence did not reveal that claimant has suffered from any impairments or mental conditions that have been disabling in nature or would prohibit her from performing

8

sustained substantial gainful activity since her alleged disability onset date of October 1, 1999. (T.15).

The ALJ's finding that the claimant's testimony regarding her medical impairment was not totally credible is not substantiated by the record. Her complaints are consistent with clinical and diagnostic findings by her treating physicians which are well documented in the record. A diagnostic study (MRI) revealed degenerative disk disease and disk herniation at C6-7 level. A nerve conduction study revealed a L5-S1 radiculopathy and diminished reflexes in both the upper and lower extremities. She was also found to have a limited range of motion in the cervical and lumbar spine (Exh. 11F), weakness in the extensor hallucis (Exh. 11F) and positive straight leg raising (Exh. 11F) and diminished sensation in the lower right extremity (Exh. 14F). These objective findings support the claimant's complaints of pain and difficulty with prolonged walking, sitting or standing. This chronic severe pain was disabling notwithstanding extensive use of strong medications such as Lortab and Hydrocodone. Because of her chronic pain and depression, she was also prescribed anti-depressants and anti-psychotic drugs. Indeed, her treating physician, Dr. Gosy, a specialist in pain management, in a report dated 11/25/02 (T. 327) stated, "This is the third opiate try in addition to OxyContin and Morphine that were ineffective." In the same report, he found "She is suffering from intractable pain due to fibromyalgia. She is

being treated with a Duragesic patch 50 mcg/hour.  She has experienced no benefits.  (T. 327)

In a report dated 12/16/02, Dr. Gosy stated "She is afflicted with widespread pain along the spinal axis especially in the lower extremities due to fibromyalgia.  She has not done well with Hydrocodone 5 mg four per day, Duragesic patch 50 mcg/hour, Norflex, Effexor, Xanax.  She developed encephalopathy.  She attempted to 'close the door' on muscle pain relievers by saying that all muscle relaxants 'make my muscles hurt more.'" He then placed her on Ultram to supplement the effect of Hydrocodone.  He also suggested replacing Xanax with Klonopin which are anti-depressants.  (T. 328) Subsequent reports submitted by Dr. Gosy dated 2/24/03 (T. 329), 6/6/03 (T. 330), 6/29/03 (T. 331), 12/24/03 (T. 333) together with summaries of visits with her treating physician, Arvind K. Wadhwa, M.D. (T. 334-348) confirm her complaint of chronic pain throughout her body and in various joints which was disabling.

There is substantial evidence in the record to support the claimant's complaints of chronic severe pain and depression, the combination of which renders her disabled within the meaning of the Act.

The ALJ found plaintiff's testimony of the severity of her symptoms (that she has constant pain in her back and neck) was not fully supported by the record. (T.18).  The ALJ rejected plaintiff's testimony of her subjective symptoms noting that the complaints were inconsistent with the clinical and diagnostic findings in the

record. (T.18). In coming to this conclusion, the ALJ erred in relying upon Dr. Steven Dina's opinion as a treating physician when, in fact, Dr. Dina stated in his report dated 10/14/02, "The . . . claimant was examined for a consultative examination. No doctor-patient relationship exists or is implied by this examination." In addition, the ALJ incorrectly identified the claimant as a male individual when, in fact, she is female. (T. 17, 269). The ALJ credited the consultative physician's report which concluded an unknown etiology for her condition when, in fact, Dr. Dina explained his diagnosis as follows: "Diagnosis: Whole body pain, uncertain etiology, for lack of a better word, we would call this fibromyalgia." (T. 273) The diagnosis of fibromyalgia is consistent with the diagnosis made by her treating physicians who treated her over extensive periods of time with a variety of strong pain relieving medications including narcotics. However, the record makes clear that plaintiff's complaints were supported by objective medical evidence from both treating and consultative physicians. Plaintiff's combination of impairments prevented her from being gainfully employed.

Plaintiff's treating physicians, Dr. Reszel, Dr. Landi, Dr. Bansal, Dr. Castiglia and Dr. Gosy, began treating plaintiff as early as October 1999 for back and joint pain. (T.183). Dr. Reszel performed a nerve conduction study on plaintiff in March 2000 and opined that plaintiff had advanced L5-S1 radiculopathy. (T.135).

Plaintiff was prescribed Lortab for the pain and referred to Dr. Landi.

Dr. Landi of the University at Buffalo neurological surgery clinic opined in May 2000 that plaintiff had chronic back and right hip pain and suggested an MRI of the lumbar spine and to continue taking Lortab. (T.142). His examination found sharp pain in the right hip, pain with external rotation of the hip, decreased pinprick sensation in the right L5-S1, and bilateral weakness and downgoing plantar reflexes. (T.142).

Plaintiff visited the DeGraff Memorial Hospital emergency room complaining of pain in her hips and legs in July 2000 and was prescribed Lortab and instructed to rest and to visit Dr. Reszel later that week. (T.138-40).

Dr. Bansal of the Pain Rehab Center of Western New York treated plaintiff beginning in May 2001 and saw her twelve times through November 2001 for her chronic back pain. The pain in her neck, back and right leg affected her social dealings, recreational activities, desire and abilities. (T.216). The examination revealed limited range of motion in the cervical and lumbar spine, weakness in the extensor hallucis on the right at 4/5, positive straight leg raising on the right, and tenderness over the lower lumbar spine with an extensive amount of myofascial pain present in the lumbar paravertebral muscle, intracapular muscles, gluteus, piriformis and iliotibial fascia. (T.216-17). Dr. Bansal opined that plaintiff had symptoms of lumbar disc disease with radiculopathy, degenerative

12

disc disease at T10-T11, mild apophyseal joint osteoarthritic hypertrophic changes at the L4-L5 and L3-L4 levels. (T.217). He treated her with several medications including Neurontin, OxyContin, Motrin, and Lortab as well as with steroid injections in her back. (T.201-17). He also noted that she was in physical therapy. (T.210-13).

Dr. Castiglia of the Buffalo Neurosurgery Group in December 2001 ordered an MRI of the lumbar spine as well as numerous blood tests. (T.234). Physical examination revealed plaintiff to have acute pain with any type of movement. (T.232-35). Plaintiff had palpable cervical and lumbar spinal tenderness. She had limited range of motion of the cervical spine with flexion and extension. (T.234). Plaintiff was prescribed Lortab for pain. *Id.* The MRI was not performed until January 2002 because of insurance issues but the MRI revealed C4-5 mild spondylosis, C5-6 spondylytic ridge flattening the ventral thecal sac and flattening the ventral spinal cord. It also revealed a small disc herniation indenting the ventral thecal sac at C6-7. (T.228). Dr. Castiglia also prescribed more Lortab as well as Neurontin and Soma. (T.231).

Dr. Gosy of the Pain Treatment Center saw plaintiff for a neurologic consultation in October 2002 and diagnosed "likely fibromyalgia, medication misuse, [and] cervical stenosis." (T.282). He prescribed Baclofen, and stopped Soma, Neurontin, and Lortab because of plaintiff's history of opiate misuse. *Id.* Exams of her spine in subsequent visits did not consistently reveal any acute

trigger points but did reveal lumbar pain consistent with earlier exams and tests. (T.327-33).

Dr. Abialmouna of Tonawanda Medical Practice opined in June 2004 that plaintiff suffered from fibromyalgia. (T.364).

Taking these impairments in combination, there is substantial evidence in the record to support a finding that plaintiff is disabled and unable to be gainfully employed within the meaning of the Act.

## CONCLUSION

For the reasons set forth above, I find that based upon the evidence contained in the record, the plaintiff is disabled as of October 1, 1999. Accordingly, the case is remanded to the Commissioner for calculation and payment of benefits. The Commissioner's motion for judgment on the pleadings is denied. The plaintiff's motion for remand is granted for proceedings consistent with this decision.

ALL OF THE ABOVE IS SO ORDERED.

                                    s/Michael A. Telesca
                                    MICHAEL A. TELESCA
                                 United States District Judge

Dated:   Rochester, New York
         May 2, 2007